**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SHERYL D. TAYLOR, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-12-2929 |
| § | |
| OCWEN LOAN SERVICING, LLC, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Sheryl D. Taylor sued Ocwen Loan Servicing, Inc. over its attempts to collect mortgage payments. In her first amended complaint, Taylor asserted claims for violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692c(a)(2), 1692d(5), and 1692g; the Texas Debt Collection Act (TDCA), TEX. FIN. CODE §392.304(a)(4) and (8); and the Texas Deceptive Trade Practices Act (DTPA), TEX. BUS. & COM. CODE § 17.50. Ocwen filed a motion to dismiss Taylor's claims under § 1692g of the FDCPA and under the DTPA. Based on the pleadings; the motion and response; and the applicable law, Ocwen's motion for partial dismissal, (Docket Entry No. 13), is granted. Taylor's DTPA claim is dismissed with prejudice and without leave to amend. Taylor may replead her claim under § 1692g of the FDCPA by **July 19, 2013** if she can allege facts plausibly showing that her counsel's November 17 letter was an "initial communication."

The reasons for this ruling are explained below.

**I.    Background**

On June 26, 1998, Taylor executed a note and deed of trust in favor of Summit Mortgage Corporation. Ocwen later became the loan servicer.

On November 17, 2011, Taylor's counsel sent Ocwen a request for validation of the debt. Ocwen did not respond. Taylor's counsel sent a second request on January 5, 2012. In a letter dated February 1, 2012, Ocwen provided a loan-origination summary and stated that it had "updated [its] systems for [Taylor's counsel] to receive all further correspondence regarding [Taylor's] loan." Ocwen's letter did not provide an accounting, evidence validating the debt, or the name or address of the creditor. On February 16, Taylor's counsel sent a Qualified Written Request under the federal Real Estate Settlement Practices Act (RESPA).[1] In its response, dated February 22, Ocwen included information similar to its February 1 letter.

On February 28, Taylor's counsel sent Ocwen a letter stating that its actions violated the FDCPA, TDCA, and DTPA. On March 8, Ocwen responded in a letter stating that it was continuing research efforts on Taylor's loan and would respond further within 15 days. On May 25, Taylor's counsel sent Ocwen a demand letter. On June 27, Ocwen responded by sending a letter to Taylor's home address, again stating that it was continuing to research her loan and would respond further within 15 days.

Taylor alleges that Ocwen has called her home phone number 72 times since it was given notice on November 17, 2011 that she was represented by counsel.

On December 1, 2012, Taylor sued Ocwen in state court for violating §§ 1692c(a)(2), 1692d(5), and 1692g of the FDCPA; the TDCA; and the DTPA. Under Texas law, certain violations of the TDCA are deceptive trade practices under the DTPA. Ocwen timely removed and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry No. 3). This court granted Ocwen's motion to dismiss in part and denied it in part. Taylor was given leave to replead her claim

---

[1] Taylor's first amended complaint does not include a RESPA claim.

2

under § 1692g of the FDCPA to specify the date of her "initial communication" with Ocwen and to plead actual damages under the FDCPA and actual damages or injunctive relief under the TDCA. Taylor was also given leave to replead her DTPA claim "if she [could] show that, as a mortgagee, she is also a 'consumer' under the DTPA." (Docket Entry No. 10). Taylor requested clarification of the order dismissing her DTPA claim. This court responded by noting that the Fifth Circuit and other courts applying Texas law have held that "plaintiffs using [the DTPA's] tie-in provisions must also show that they qualify as 'consumers' under the DTPA," and that borrowing a home mortgage loan is not ordinarily sufficient to confer "consumer" status. (Docket Entry No. 11 at 1).

Taylor filed a first amended complaint, again asserting claims under §§ 1692c(a)(2), 1692d(5), and 1692g of the FDCPA; the TDCA; and the DTPA. Ocwen moved to dismiss Taylor's claims under § 1692g of the FDCPA and under the DTPA.

## II.    The Rule 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In addition to factual

3

insufficiency, a complaint may be legally insufficient to state a claim for relief.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (per curiam) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

**III.    Discussion**

    **A.    The Claim Under § 1692g of the FDCPA**

Section 1692g(a) states that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the

4

consumer a written notice containing":

- "the amount of the debt";

- "the name of the creditor to whom the debt is owed";

- "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector";

- "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will [provide] verification of the debt . . ."; and

- "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

If the debtor requests verification of the debt or information on the original creditor within 30 days of receiving the initial communication, the debt collector must "cease collection of the debt . . . until the [requested information] is mailed to the consumer." § 1692g(b). "Communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2).

Ocwen contends that Taylor's § 1692g claim fails because she did not sufficiently plead that the letters Taylor's counsel sent Ocwen were "initial communications" that would trigger the notice requirements. Ocwen also argues that "to trigger a violation of § 1692g, the *debt collector* must make an initial communication without validating the debt." (Docket Entry No. 13, ¶ 7 (emphasis added)). Ocwen contends that the complaint alleges only when Taylor first initiated a

5

communication with Ocwen. (*Id*., ¶ 8). Taylor responds that nothing in the FDCPA supports Ocwen's contention that the initial communication must come from the debt collector instead of the debtor.

This court need not resolve whether or in what circumstances debtor-initiated communications may be "initial communications" under the FDCPA. Even assuming that the November 17, 2011 letter that Taylor's counsel sent to Ocwen was a "communication in connection with the collection of [a] debt," Taylor has not sufficiently pleaded that her counsel's letter was an "initial" communication.

In her first amended petition, Taylor alleges:

> On November 17, 2011, Plaintiff's counsel sent Ocwen a "Request for Validation of the Debt" letter (the "RVD") pursuant to the Fair Debt Collection Practices Act, 15 U.S.C.1692g, requesting that Plaintiff's debt be validated. Plaintiff gave Ocwen notice that Plaintiff was represented by Middagh & Lane with respect to such debt. Thus, November 17, 2011 was the date of the "initial communication" as that term is used in the FDCPA.

(Docket Entry No. 12, ¶ 12). These allegations are conclusory. They are also inconsistent with other parts of the complaint. Taylor alleges that she received "mortgage loan services from Ocwen on an ongoing basis" and that "Ocwen sent mortgage statements to [Taylor] and [Taylor] made payments to Ocwen," (*id*., ¶ 10), for an extended period before she "retained counsel to help dispute the claims against Ocwen," (*id*., ¶ 11). But the mortgage loan statements and other communications that Taylor received from Ocwen about her debt before the November 17 letter were "communications in connection with [a] debt" under the FDCPA. The first of these communications was the "initial communication." *See Peterson v. Portfolio Recovery Assoc., LLC*, 430 F. App'x. 112, 114–15 (3d Cir. 2011) ("'[T]here can be only one 'initial communication' between a debt

collector and a consumer, and any communication that follows the 'initial communication' is necessarily not an 'initial' communication." (quoting *Derisme v. Hunt Leibert Jacobson, PC*, 2010 WL 4683916, at *5 (D. Conn. Nov. 10, 2010). "Any letters after [the first communication between a debt collector and a consumer] are irrelevant for purposes of the notice requirement in Section 1692g(a)." *Ehrich v. RJM Acquisitions LLC*, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009). Taylor has not alleged facts plausibly showing that the November 17, 2011 letter was the first communication between her and Ocwen in connection with the collection of her mortgage debt. Her claim under § 1692g of the FDCPA is dismissed. Taylor may replead her § 1692g claim if, consistent with her counsel's obligations under Federal Rule of Civil Procedure 11, she can plead facts suggesting that the November 17, 2011 letter was the first communication between Ocwen and Taylor in connection with the collection of her mortgage debt.[2]

### B. The DTPA Claim

Ocwen has moved to dismiss Taylor's DTPA claim on the ground that she is not a "consumer" under that statute. To state a claim under the DTPA, a plaintiff must show three things: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas,Inc*., 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)). Taylor relies on the tie-in provision that makes a violation of the TDCA a deceptive act under the DTPA. TEX. FIN. CODE § 392.404(a). Taylor contends that because her claim falls

---

[2] The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

under the tie-in provision, rather than directly under the TDCA, she is not required to show that she is a "consumer."

The Fifth Circuit has reached a contrary conclusion. In *Cushman v. GC Services, L.P.*, 397 F. App'x 24, 28 (5th Cir. 2010), the court held that plaintiffs asserting claims under a DTPA tie-in provision must show that they qualify as "consumers" under the DTPA. The court noted that "[t]he Texas Supreme Court has consistently held that '[o]nly a 'consumer' can maintain a cause of action directly under the DTPA.'" *Id.* at 27–28 (quoting *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000)). The plaintiff in *Cushman*, like Taylor, argued that plaintiffs asserting claims under the DTPA's tie-in provisions need not show consumer status because § 17.50(h) of the DTPA uses the term "claimant," rather than "consumer," to describe what damages are available to those "granted the right to bring a cause of action under [the DTPA] by another law." *Cushman*, 397 F. App'x at 28. The court found, however, that "[a]lthough the text of section 17.50(h) distinguishes the type of damages that DTPA plaintiffs bringing claims through 'tie-in' statutes may recover, it does not exempt those claimants from proving consumer status." *Id.*

Other courts have similarly concluded that plaintiffs asserting DTPA tie-in claims must demonstrate consumer status. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 822 (Tex. 2012) (stating in dicta that "[t]he Property Code provision is among the 'tie-in' statutes actionable under DTPA section 17.46, and a *consumer* may sue for a violation." (emphasis added) (footnote omitted)); *Dodeka, L.L.C. v. Garcia*, 2011 WL 4825893, at *2 (Tex. App.—San Antonio Oct. 12, 2011, no pet.) ("[T]he DTPA 'tie-in' statute does not exempt a plaintiff from proving consumer status."); *Hansberger v. EMC Mortg. Corp.*, 2009 WL 2264996, at *2 (Tex. App.—San Antonio July 29, 2009, pet. denied) ("[T]he party bringing a claim under the DTPA for a violation of a tie-in

statute must still satisfy the requirement of being a 'consumer.'"); *see also Eads v. Wolpoff & Abramson, LLP*, 538 F. Supp. 2d 981, 989 (W.D. Tex. 2008) (holding that a DTPA plaintiff using the TDCA tie-in statute must prove consumer status in order to have standing); *Marketic v. U.S. Bank Nat'l Assoc.*, 436 F. Supp. 2d 842, 854–55 (N.D. Tex. 2006) ("[Section] 17.50(h) does not exempt claimants from showing that they qualify as a 'consumer' . . . .").[3]

Taylor argues that *Cushman* and similar decisions are wrong. She contends that consumer status is not required for tie-in plaintiffs because § 17.50(h), which describes the damages available to plaintiffs asserting tie-in claims, uses the term "claimant," while § 17.50(a)–(g), which describe damages generally available under the DTPA, use the term "consumer." Taylor acknowledges that there is no case law supporting her interpretation and that the cases Ocwen cites have reached a different conclusion. The statutory language also fails to support Taylor's argument. Although § 17.50(h) uses the term "claimants," it incorporates § 17.50(b)(1), which uses the term "consumer." Additionally, § 17.50 controls what relief is available to plaintiffs bringing DTPA claims, not who may bring suit.

The language of the DTPA tie-in provision at issue here also suggests that Taylor must show that she is a "consumer." The tie-in provision does not automatically make a TDCA violation an DTPA violation. It provides that "[a] violation of [the TDCA] is a *deceptive trade practice* under

---

[3] In *Crown Life Ins.*, 22 S.W.3d 378, the Texas Supreme Court found that while "only a 'consumer' may maintain a cause of action directly under the DTPA," *id.* at 386, "[l]ack of consumer status . . . [did] not bar [the plaintiff] from bringing a cause of action under [the former] Article 21.21 [of the Texas Insurance Code]," *id.* at 387. A provision in the former Article 21.21 of the Texas Insurance Code "incorporate[d] the DTPA laundry list of deceptive acts [but did] not incorporate the entire DTPA." *Id.* at 386. The TDCPA's tie-in provision does the reverse: it makes a TDCA violation a *per se* deceptive practice under the DTPA. Recognizing this distinction, the Fifth Circuit in *Cushman* found that the Texas Supreme Court's holding in *Crown Life Ins.*"is limited to claims brought under Insurance Code Article 21.21, and does not reach claims brought directly under the DTPA pursuant to 'tie-in' statutes such as section 392.404 of the TDCPA." *Cushman*, 397 F. App'x at 28.

9

[the DTPA], and is actionable under that subchapter." TEX. FIN. CODE § 392.404 (emphasis added). The tie-in provision is silent, however, as to the other two requirements for asserting a TDCA claim: consumer status and causation. This suggests that a plaintiff asserting a TDCA claim must show that she is a "consumer" and that the deceptive acts "constituted a producing cause of the consumer's damages." *Doe*, 907 S.W.2d at 478.

Ocwen contends that Taylor cannot show that she is a consumer under the DTPA. To qualify as a consumer, a person "must seek or acquire goods or services by lease or purchase" and "the goods or services sought or acquired must form the basis of [that person's] complaint." *Fix v. Flagstar Bank*, FSB, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied). "If either requirement is lacking, the party must look to the common law or some other statutory provision for redress." *Id.* Ocwen points to the Texas Supreme Court's holding in *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 174–76 (Tex. 1980), that a plaintiff trying to borrow money to avoid repossession of his car was not a DTPA "consumer" because lending money is not a "good" or "service." As a result, a home mortgage loan does not ordinarily qualify as a "good" or "service" under the DTPA. *See Fix*, 242 S.W.3d at 160 (refinancing a home equity loan is not a good or service under the DTPA), *and Marketic*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (a home equity loan is not a good or service under the DTPA).

Taylor acknowledges that "pure extensions of credit do not qualify as goods or services under the DTPA." (Docket Entry No. 17, ¶ 8). She argues that she is a "consumer" because she used the loan to finance the purchase of a home. Taylor points to the Texas Supreme Court's decision in *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983), holding that the plaintiffs were consumers because their mortgage loan was intertwined with a contractor's

10

agreement to build the house. The plaintiffs executed a note and deed of trust against a property in favor of a builder as security for the home construction. The builder assigned the note and lien to a bank in exchange for interim construction financing, but the builder abandoned construction after the bank paid the construction loan. After the bank foreclosed on the property under the deed of trust, the plaintiffs sued the bank for wrongful foreclosure and under the DTPA. The bank moved to dismiss the DTPA claim on the ground that the plaintiffs were not "consumers." The Texas Supreme Court held that the plaintiffs were not "required to seek or acquire goods or services from the Bank in order to meet the statutory definition of consumer . . . ." *Id.* at 707. "A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint." *Id.* The Court found that the bank's "unconscionable act in causing the sale of the [plaintiffs'] property and the partially built house arose out of [their] transaction with [the builder]" because the bank "had no greater right to foreclose on the [plaintiffs'] property [than the builder did]." *Id.* This made the plaintiffs "consumers" under the DTPA. In contrast to the plaintiffs in *Riverside*, the plaintiffs in *Flenniken* made "no complaint as to the [b]ank's lending activities." *Id.* at 708; *see also Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982) (holding that the plaintiff was a "consumer" because the alleged DTPA violation against the defendant-lender arose from a provision in a contract for the sale of a truck and did not deal "solely with the extension of credit.").

In *Walker v. F.D.I.C.*, 970 F.2d 114 (5th Cir. 1992), the Fifth Circuit applied the *Flenniken* exception to *Riverside*. In *Walker*, the plaintiffs took out a loan to finance the construction of a hotel. The court found that the plaintiffs lacked consumer status, distinguishing *Flenniken* and

*Knight* because, in those cases, "the goods or services sought by the borrower formed the basis for the DTPA complaint." *Id.* at 123. The plaintiffs in *Walker* were not consumers because "although [they] sought to use the multi-million dollar loan for the construction of a 238-room [hotel], they allege no complaint pertaining to the [hotel] itself." *Id.* Several Texas appellate courts have followed *Walker* or reached the same result. *See, e.g.*, *Everson v. Mineola Cmty. Bank, S.S.B.*, 2006 WL 2106959, at *2 (Tex. App.—Tyler July 31, 2006, pet. denied) (holding that plaintiffs who had borrowed money to purchase a home and land were not "consumers" because that purchase was not the basis of their complaint); *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 134–35 (Tex. App.—Corpus Christi 2001, no pet.); *see also Manno v. BAC Home Loans Servicing, LP*, 2011 WL 3844900 (W.D. Tex. Aug. 26, 2011); *Nichamoff v. CitiMortgage, Inc.*, 2012 WL 4388344 (S.D. Tex. Sept. 25, 2012) (both applying *Walker*'s holding to dismiss DTPA claims brought by borrowers).

Under binding precedent from the Texas Supreme Court and Fifth Circuit, Taylor is not a "consumer" because her home purchase does not form the basis of her DTPA claim. The allegations that Ocwen violated the DTPA by using illegal collection methods arise solely from Ocwen's extension of credit to Taylor.

Taylor also contends that she is a consumer because she has "received mortgage loan services from Ocwen" in connection with the purchase of her home. Taylor points out that, as a loan servicer, Ocwen acts as a "middle-man" between homeowners and banks. But the Texas Supreme Court rejected an identical argument in *Riverside*, 603 S.W.2d 169 (Tex. 1980). In that case, the plaintiff argued that "in the course of extending credit, Riverside Bank necessarily provided other services to [the plaintiff] . . . [including] such things as help in filling out his loan application, financial counseling, and the processing of his loan." *Id.* at 175. The court held that these were not

"services" under the DTPA because, in taking out the loan, the plaintiff's objective was to acquire money and there was "no evidence that he sought to acquire anything other than this use of money." *Id.* at 175. Like the plaintiff in *Riverside*, Taylor has not alleged that her objective for borrowing money was to acquire the services from the lender (or a subsequent servicer).

Taylor's DTPA claim is dismissed because she has not alleged facts suggesting that she is a "consumer" under the DTPA. That dismissal is with prejudice. This court previously dismissed Taylor DTPA claim for the same reasons stated here, and Taylor's amendments failed to cure the pleading deficiency. Further amendment would be futile.

**IV.    Conclusion**

Ocwen's motion to dismiss, (Docket Entry No. 13), is granted. Taylor's DTPA claim is dismissed with prejudice and without leave to amend. Taylor may replead her claim under § 1692g of the FDCPA by July 12, 2013 if she can allege facts plausibly showing that her counsel's November 17 letter was an "initial communication."

SIGNED on July 3, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge